UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIMEE L. KEENE,

    Plaintiff,                                          Civil Action No. 07-14403

v.                                                   HON. NANCY G. EDMUNDS
                                                       U.S. District Judge
                                                       HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Aimee L. Keene brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On March 23, 2004, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging an onset date of May 1, 2002 (Tr. 45-47). On June 19, 2006, Administrative Law Judge ("ALJ") John A. Ransom held an administrative hearing in Flint,

Michigan (Tr. 205-227). Plaintiff, represented by attorney Matthew Taylor, testified (Tr. 208-223), as did Pauline McEachin[1], a vocational expert ("VE") (Tr. 223-225). On October 10, 2006, ALJ Ransom found that Plaintiff was not disabled, determining that she was capable of a significant range of exertionally light, unskilled work (Tr. 24). On September 13, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on October 16, 2007.

## BACKGROUND FACTS

Plaintiff, born December 19, 1983, was 23 when the ALJ issued his decision (Tr. 25, 45). She completed a General Equivalency Degree ("GED") in 2004 and worked previously as a waitress and fast food worker (Tr. 51, 55). She alleges disability due to back problems (Tr. 50).

### A. Plaintiff's Testimony

ALJ Ransom, noting an allegation of depression as well as back problems, began the hearing by ordering a consultive psychological examination of Plaintiff (Tr. 207). Plaintiff, 5' 3" and 145 pounds, testified that she had recently lost approximately 15 pounds due to dieting and nausea caused by depression medication (Tr. 209). Plaintiff testified that she possessed a driver's license, but because of back problems, drove only short distances (Tr. 209). Plaintiff reported that she quit school during 10th grade after being struck by a car, but later received a GED (Tr. 210). She testified that back pain, leg pain, and fatigue precluded

---

[1] VE Pauline McEachin is incorrectly referred to in the administrative hearing transcript as *McCachin*.

her former fast food and waitress jobs (Tr. 210). Plaintiff, single, testified that she lived with her parents, sister, and 3-year old daughter, and indicated that her mother helped her care for her daughter (Tr. 211-212). She reported that her lower back pain radiated into her left leg and upwards into the middle of her back (Tr. 213). On a scale of one to 10, Plaintiff reported four to five level pain when resting and eight to nine level pain when more active, adding that back discomfort obliged her to recline three to four times every day (Tr. 213). She also reported leg swelling (Tr. 214).

Plaintiff alleged that her pain was exacerbated by standing or sitting for "a long period of time" (Tr. 214). She estimated that she could stand comfortably for a maximum of 15 minutes and sit for up to 10, adding that she also experienced right knee pain (Tr. 215). Plaintiff reported that a consultive surgeon advised against surgery (Tr. 216). She also reported that as a result of lupus, she experienced extreme fatigue and an increase of back and leg pain (Tr. 216). She alleged that her condition obliged her to spend an the entire day in bed four to five times each month (Tr. 217). Plaintiff indicated that her mother performed the bulk of household chores (Tr. 217-218). She stated that she relieved her discomfort by reclining with a heating pad (Tr. 218).

Plaintiff testified that she had become depressed as a result of her physical limitations and did not socialize (Tr. 219). She reported that undergoing physical therapy made her condition worse and that home exercises helped only temporarily (Tr. 220-221). Plaintiff testified that she was not interested in epidural injections, but experienced at least sporadic relief from Fiorinal shots (Tr. 221). Plaintiff reported that pain medication temporarily

improved her condition, but created the side effects of headaches, nausea, and fatigue (Tr. 222). Plaintiff also alleged hand numbness and tingling as a result of Carpal Tunnel Syndrome ("CTS"), testifying that she had been prescribed wrist splints for nighttime use (Tr. 222). She testified that she attended college for two and a half weeks in 2004, but was forced to quit because of health problems (Tr. 226).

### B. Medical Evidence

#### 1. Treating Sources

In April 2003, Plaintiff requested wrist braces after experiencing symptoms of CTS (Tr. 132). Treating notes from the following month, noting that Plaintiff was a smoker "post partum [three] weeks," state that she experienced lower back pain "radiating into both legs" (Tr. 131). In August 2003, an MRI of Plaintiff's lumbar spine a showed a "moderate-sized" disc herniation at L4-5 (Tr. 100). In September 2003, neurosurgeon Lisa L. Guyot, M.D., performed a consultive examination, noting Plaintiff's report that her back problems began four years earlier as a result of a motor vehicle accident (Tr. 106). Plaintiff reported "cramping and stabbing" lower back pains, which were lessened by heat therapy (Tr. 106). Plaintiff reported that her surgical history was limited to the removal of a cyst (Tr. 107). The examination showed a limited range of lumbar spine motion but otherwise normal results, including normal muscle strength and gait as well as an absence of muscle atrophy (Tr. 108). Dr. Guyot noted that Plaintiff "appeared to be in some pain," recommending epidural steroid injections and tri-weekly physical therapy (Tr. 108). The same month, Plaintiff received prescriptions for both Vicodin and Darvocet (Tr. 128, 129).

In October 2003, Richard J. Kovan, M.D., examined Plaintiff, observing that she had been struck by a car in 1998 (Tr. 104). Dr. Kovan, noting that Plaintiff complained of "intermittent dull achy type left-sided low back," recorded that upon recommending electrodiagnostic testing, Plaintiff stated abruptly that she was feeling ill "and asked to reschedule the appointment" (Tr. 104). Dr. Kovan noted further that Plaintiff later contacted him, indicating that she was "not interested," in testing because she had been "advised by her family not to undergo any formal treatment" (Tr. 104). In March 2004, Plaintiff also complained of knee swelling but stated that "she want[ed] to wait to see . . . if [the] pain will just go away on its own" (Tr. 124). The same month, a physical therapy evaluation found 5/5 strength in the lower extremities (Tr. 111). John Storrer, P.T., prescribed home exercises (Tr. 113). The same month, Plaintiff discontinued therapy, stating that the home exercises "caused increased pain in the morning," which interfered with her ability to care for her child (Tr. 116, 119).

In April 2004, Douglas Benton examined Plaintiff, noting that she complained of knee pain and depression (Tr. 187). Treating notes from May 2004 indicate that Plaintiff experienced "whole body aches," and knee swelling (Tr. 186). On May 18, 2004, Dr. Benton stated that Plaintiff's herniated disc precluded work for "12 consecutive months" (Tr. 148). The following day, Dr. Guyot opined as follows:

> "[A]t this time I do not believe that surgery should be her only option. I recommend that she try the epidural steroid injections . . . rather than surgery. If this course of treatment does not work for her then a left sided L4-5 laminectomy and discectomy would be the next step in treating her condition"

(Tr. 145). In August 2004, Plaintiff requested a pain medication change, reporting that Darvocet was ineffective (Tr. 182). The following month, Plaintiff requested an increased dose of Prozac (Tr. 181).

January 2005 treating notes by Dr. Benton state that Plaintiff's back pain was "non-radiant" (Tr. 179). In March 2005, blood testing showed the presence of lupus (Tr. 176). In April 2005, Dr. Benton opined that Plaintiff was "unable to work for 12 consecutive months due to a herniated disc and lupus," noting further that her surgeon did not recommend surgery (Tr. 143). August 2005 treating notes indicate that Plaintiff's depression was "stable" (Tr. 167). In October 2005, Plaintiff reported dizziness and fatigue (Tr. 165). In November 2005, Plaintiff reported muscle spasms in the lumbar spine area (Tr. 162).

In December 2005 Jolanta Sobotka, M.D., examined Plaintiff, noting that despite a positive lupus anticoagulant, she did not have a history of blood clots or miscarriages (Tr. 152). Dr. Sobotka also noted an absence of joint inflammation, finding that "the exam was entirely benign with [the] exception of the lumbar area where she had a herniated disk" (Tr. 152). Nerve conduction studies performed in January 2006 showed the presence of "mild" CTS (Tr. 158). In May 2006, Dr. Benton opined that as a result of the disc herniation, lupus, and CTS, Plaintiff was "unable to work for 12 consecutive months"(Tr. 146). May 2006 treating notes show that Plaintiff requested steroid injections (Tr. 154). The following month, Dr. Benton hand-wrote the following statement on a prescription form: "I agree with [Plaintiff's] statement regarding her medical condition" (Tr. 190).

### 2. Consultive and Non-Examining Sources

A May 2004 Physical Residual Functional Capacity Assessment performed by B. D. Choi, M.D., on behalf of the SSA, found that Plaintiff retained the ability to lift 20 pounds occasionally and ten pounds frequently; stand, walk or sit for six hours in an eight-hour workday; and an unlimited ability to push and pull in both extremities (Tr. 136). The Assessment found further that Plaintiff was limited to *occasional* climbing, stooping, kneeling, crouching, and crawling, but could perform balance-related activities on a *frequent* basis (Tr. 137). The Assessment noted the absence of manipulative, visual, communicative, or environmental limitations (Tr. 138-139). Dr. Choi concluded that Plaintiff's allegations of limitation were only partially credible, citing treating records which showed a normal range of motion ("ROM") and normal strength in the lower extremities (Tr. 140).

In July 2006, psychologist Matthew P. Dickson, Ph.D., performed a consultive psychological examination of Plaintiff, noting a history of long-term back problems (Tr. 191). Plaintiff exhibited socially appropriate behavior and good grooming (Tr. 191-192). She reported that she spent her time taking care of her child, performing occasional laundry chores, shopping and paying bills (Tr. 191-192). Plaintiff appeared "somewhat depressed" but exhibited normal cognitive abilities (Tr. 192-193). Based on the results of the Minnesota Musltiphasic Personality Inventory-2 test, Dr. Dickson opined that Plaintiff's "physical complaints are probably extreme and reflect a general lack of effectiveness in her life. Longstanding personality issues make it likely for her to develop physical symptoms under stress" (Tr. 193). Dr. Dickson found further that Plaintiff's "profile suggest[s] . . . manipulation of others through physical symptoms" (Tr. 194). Dr. Dickson assigned Plaintiff

a GAF of 63[2] (Tr. 194). Dr. Dickson also completed a Medical Source Statement of Ability to do Work-Related Activities (Mental), finding *mild* limitations in Plaintiff's ability to interact appropriately with the public, supervisors, co-workers; respond appropriately to work pressures; or adapt to "changes in a routine work setting," finding further that Plaintiff's abilities were otherwise unimpaired (Tr. 197-198).

### 3. Material Submitted for Appeals Council Review

A November 2006 MRI of Plaintiff's lumbar spine shows the presence of a "[l]arge posterior disc herniation" (Tr. 200).

### C. Vocational Expert

VE Pauline McEachin classified Plaintiff's former jobs as a fast food worker and waitress as unskilled at the light exertional level[3] (Tr. 90). She found that if Plaintiff's testimony that she needed to recline three to four times a day were fully credited, she would be unable to perform any gainful employment (Tr. 224). The ALJ then posed the following

---

[2]GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

hypothetical question:

> "[A]ssume for me, if you would, that [Plaintiff] could perform light work but she'd require[] a sit/stand option at will, no repetitive bending, twisting, turning, pushing, [pulling], gripping or grasping, no crawling, squatting, kneeling or climbing, no air or vibrating tools, no repetitive foot or hand controls, simple repetitive routine low stress work. Assuming [t]hose facts, in your opinion would their be jobs [in] existence in significant numbers in the regional economy that she could perform?"

(Tr. 225). The VE replied that such an individual could perform the unskilled exertionally light work of a information clerk (1,700 positions in the regional economy), visual inspector (1,100), security guard (2,000), and an inspector (4,000) (Tr. 225). She stated that her testimony conformed to the Dictionary of Occupational Titles ("DOT") (Tr. 225).

### D. The ALJ's Decision

ALJ Ransom found that although Plaintiff experienced the severe impairments of a "herniated disc at L5-S1, right knee pain, carpal tunnel syndrome, lupus and depression," none was severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 18, 22). The ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

> "[A] limited range of unskilled light exertion work with restrictions of a sit/stand option at will, no repetitive bending, twisting, turning, pushing, pulling, gripping or grasping, no crawling, squatting, kneeling or climbing, no air or vibrating tools, no repetitive use of foot or hand controls and simple, repetitive, routine and low stress job tasks."

(Tr. 21, 24). Adopting the VE's job numbers, he determined that Plaintiff could perform the work of an information clerk, visual inspector, security guard, and inspector (Tr. 23, 24).

The ALJ supported his determination by stating that he found Plaintiff's subjective

complaints "not totally credible" (Tr. 24). He noted that although Plaintiff reported that her medications "caused headaches, nausea, tiredness and drowsiness. . . the record does not indicate that [she] has discussed these negative side-effects with the prescribing physician who might have altered the medications" (Tr. 20). He noted further that her treatment for back pain had been conservative, indicating that "her back symptoms are not of a severity that she is willing to undergo a surgical procedure which would be expected to significantly improve or resolve her symptoms" (Tr. 20). Citing Plaintiff's testimony, he found that she regularly washed dishes, exercised, shopped, and walked (Tr. 21). He found further that her testimony that she was unable to sit comfortably for more than 15 minutes stood at odds with her ability to sit "through an approximate 30-minute hearing" without "display[ing] . . . unusual behaviors due to discomfort" (Tr. 21). He noted that her activities of daily living ("ADLs") included dressing her daughter, overseeing her daughter's outdoor activities, grocery shopping, visiting with family members, and folding clothes, finding that "[s]uch descriptions of daily activities, although not overly ambitious, are not unusual for an unemployed person. While [she] undoubtedly may experience some pain, limitations and restrictions from her exertional and non-exertional impairments," her testimony regarding "the extent and frequency is not fully credible or supported by the objective medical evidence of record" (Tr. 21).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[4]

### A. The Treating Physician Analysis

Plaintiff argues first that the ALJ erred by failing to credit Dr. Benton's opinion that she was disabled. *Plaintiff's Brief, Docket #12* at 3. Citing *Walker v. Secretary of Health and Human Services*, 980 F. 2d 1066 (6th Cir. 1992), she takes issue with the ALJ's statement that Dr. Benton's opinion stood unsupported by objective findings, arguing that in fact, the physician's own records support his opinion. *Id.* (citing Tr. 18). Plaintiff also contends that the ALJ failed to consider Dr. Benton's latest disability pronouncement of June 27, 2006 in which he "agree[d] with [Plaintiff's statement regarding her medical condition." *Plaintiff's Brief* at 7 (citing Tr. 190).

---

[4] Any issue not raised directly by Plaintiff is deemed waived, pursuant to *U.S. v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002). *See also Young v. Secretary of Health & Human Services,* 925 Fed. 2d 146 (6th Cir. 1990).

The opinions of treating physicians are "entitled to substantial, if not complete, deference" in the absence of contradictory evidence. *Walker, supra,* 980 F.2d at 1071. *See also Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). Assuming the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, the ALJ must nonetheless "apply certain factors . . . namely,

> the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)). Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)).

Contrary to Plaintiff's argument, the ALJ's rejection of Dr. Benton's opinion was both procedurally and substantively sound. First, the ALJ noted that Dr. Benton's disability pronouncements stood at odds with the observations of both Drs. Guyot and Sobotka, which suggested a lesser degree of limitation (Tr. 18-19). Accordingly, the ALJ was not required

to allot controlling weight to Dr. Benton's disability pronouncements.

Second, in declining to adopt Dr. Benton's opinion, the ALJ discussed the factors set forth in *Wilson.* Acknowledging that Dr. Benton had treated Plaintiff for over two years on a regular basis, the ALJ observed nonetheless that the physician's statements contradicted the findings of more specialized treating sources. In particular, the ALJ cited the findings of Dr. Guyot, a neurologist, which included normal muscle strength and tone as well as a normal gait (Tr. 19, 108). The ALJ also discounted Dr. Benton's opinion on the basis that Dr. Guyot advised against surgery, reasonably inferring that the neurologist would have prescribed more aggressive treatment if Plaintiff had truly been incapable of all gainful employment (19, 145). Likewise, the ALJ noted that Dr. Sobotka, a rheumatologist, characterized his findings as "entirely benign" with the exception of the herniated disc (Tr. 19, 152). As discussed more fully in Section **B**. *infra,* the ALJ also noted that Plaintiff's wide range of regular activities undermined Dr. Benton's finding that she was precluded from all work (Tr. 21).

Despite Plaintiff's argument to the contrary, the ALJ permissibly noted that Dr. Benton "did not state any findings upon examination or diagnostic testing" to support his disability opinion (Tr. 18). Although Plaintiff cites Dr. Benton's records which indicate muscle spasms, a limited range of lumbar spine motion, and leg numbness (Tr. 111-112, 162, 168-169), they do not suggest limitations consistent with an inability to perform any gainful employment.

Finally, Plaintiff contends that the ALJ erred by failing to consider Dr. Benton's June 27, 2006 opinion that he "agree[d] with [Plaintiff's statement regarding her medical condition" (Tr. 190). Plaintiff's attorney argues that the short statement, written on a prescription form, must be read in the context of his June 20, 2006 correspondence to the treating physician, which claims that Plaintiff was required "to stop and rest due to increased back and leg pain 3-4 times per day on an unscheduled basis." *Docket #12*, Exhibit 2. However, it is not clear from Dr. Benton's one-sentence pronouncement whether he agreed specifically with Plaintiff's allegation that she needed to lie down three to four times every day or was again simply concurring with her allegations of disability. Even assuming that the ALJ's failure to discuss Dr. Benton's June 27, 2006 statement was a procedural error, it appears that Dr. Benton saw Plaintiff only twice between the time of his earlier April 2006 disability pronouncement and his June 2006 statement (Tr. 154-155). Because treatment notes from April and May 2006 indicate that Plaintiff's condition remained essentially static in the two month span between Dr. Benton's disability statements, the ALJ's failure to discuss the June 2006 opinion amounts at most to harmless error.

**B. Credibility**

Plaintiff also contends that the ALJ erred in discounting her testimony. *Plaintiff's Brief* at 7 (citing SSR 96-7p). As discussed above, she also argues that the ALJ's credibility determination did not address Dr. Benton's concurrence with her claim that her condition obliged to recline three to four times each day. *Id.* at 7-8. Plaintiff contends further that the

ALJ's credibility determination contains the erroneous conclusion that she did not request medication changes, pointing out that Dr. Benton's records show that Plaintiff switched pain medications in August 2004 and January 2005. *Id*. at 8.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the "limiting effects of pain or other symptoms:"

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ's credibility determination, well supported by record evidence , should

remain undisturbed.  The ALJ discounted Plaintiff's allegations of disability by noting that her daily activities included "washing dishes, meal preparation, home exercises, shopping with her mother and going for walks" (Tr. 21).  He also cited Plaintiff ADL's which show that she oversaw her daughter's outdoor activities, shopped, folded clothes, and socialized with family members on a regular basis (Tr 21, 78-80).  He noted that although Plaintiff testified to the medication side effects of headaches, nausea, tiredness and drowsiness at the hearing, the record did not show that medication changes as a result of her alleged side effects[5] (Tr. 20).

Plaintiff also argues that her allegations of limitation are supported by Dr. Benton's findings.  However, because the physician's multiple disability pronouncements are contradicted by other medical documentation as well as Plaintiff's activities, the ALJ permissibly discounted the treating physician's opinion.  ALJ noted that although Plaintiff alleged that she was unable to sit for more than five to ten minutes, "[she] sat through an approximate[ly] 30-minute hearing and displayed no unusual behavior due to discomfort" (Tr. 21).  Having observed Plaintiff's deportment and testimony at the hearing, the ALJ's the credibility determination is entitled to great deference. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra,* 402 U.S. at 401.  An ALJ's "credibility determination must stand unless 'patently wrong in view of

---

[5]Plaintiff, citing transcript pages 171, 179, and 182, argues that in fact, she requested medication changes. *Plaintiff's Brief* at 8-9.  However, none of these records indicate that the medication changes were made because of side effects.

the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989); *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986).

    **C. Material Submitted Subsequent to the October 10, 2006 Administrative Decision**

Plaintiff submits a November 9, 2006 MRI in support of her argument that her condition continues to deteriorate. *Plaintiff's Brief* at 6. Because Plaintiff requests the consideration of material submitted after the ALJ's decision was issued, this argument is construed as a request for a "Sentence Six" remand. 42 U.S.C. § 405(g). Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."[6]

While the MRI, created in November 2006 is "new," it does not pertain to Plaintiff's condition before the October 10, 2006 administrative decision and is thus immaterial to this claim. *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir. 1988). If Plaintiff wishes to establish that she experienced a deterioration of her condition or the onset of another illness subsequent to the ALJ's decision, she must initiate a new claim for benefits alleging an onset date consistent with the deterioration. *Id.*

---

[6]In contrast, other requests for remand are made under Sentence Four, 42 U.S.C. § 405(g)("[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing").

In closing, the finding that the ALJ's determination should be upheld is not intended to trivialize Plaintiff's legitimate impairments. However, an abundance of evidence supports the conclusion that a disc herniation, lupus, and mild CTS do not preclude exertionally light work. Based on a review of this record as a whole, the ALJ's decision is clearly within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: September 18, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 18, 2008.

S/Gina Wilson<br>
Judicial Assistant